<div style="margin-left:margin">BACON<br>v.<br>LEEDS.</div>

In cases of ordinary sickness which the parties could reasonably anticipate at the time of the lease, or of a short absence of any of the slaves without leave, the lessee is not bound to give notice, and would not be entitled to a diminution of the hire, if he gave it. But in cases where the disease or the unauthorized absence continues for any length of time, notice to the owner must be shown before the lessee can claim indemnity for the loss of the services of the slaves.

We are, therefore, of opinion, that this portion of the defendant's claim must be rejected.

It is ordered, that the judgment in this case be reversed. It is further ordered and decreed, that the plaintiffs recover from the defendant the sum of $660, with legal interest, from the 11th February, 1851, till paid, with costs in both courts.

---

## Caroline E. Huntington v. C. J. Ricard.

Where a husband hires a slave belonging to his wife to a third person, he will be considered as administering her property, and notice to him of the purposes for which the slave is hired, will be regarded as notice to the wife.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J. *A. N. Ogden*, for plaintiff. *H. H. Strawbridge*, for defendant. The judgment of the court (*Eustis*, C. J., absent,) was pronounced by

SLIDELL, J. The plaintiff alleges that, in December, 1847, she hired to *Ricard* a negro slave, her separate and paraphernal property; that the slave was hired by the month, at the rate of $18 per month, and was employed by *Ricard* on board the schooner Lehman, of which he was captain, plying between ' Mobile and New Orleans, up to the month of July 1848, at which time he made a voyage from Mobile to Brazos St. Jago; and, without the petitioner's consent, took the slave with him, from which voyage the vessel never returned. She claims the value of the slave, and wages from December, 1847. There was judgment of non-suit in the court below.

The wife has the right to administer, personally, her paraphernal property without the assistance of her husband. C. C. 2362. But the paraphernal property which is not administered by the wife, separately and alone, is considered to be under the management of the husband. Ib. 2364. We consider the leasing of the wife's slave by the month, an act within the scope of the authority thus conferred.

In the present case, it is satisfactorily shown that the wife did not exercise her right of personal administration. The slave was hired to *Ricard* by her husband, *A. J. Huntington*, acting as her agent. The husband had in like manner hired him, on another occasion, to another person, during several months, on board another vessel. The husband collected the wages himself.

With regard to the voyages on which the slave was to go, it is not expressly alleged in the petition, nor is it shown by the evidence that the lessee was restricted. On the other hand, the following facts appear: The slave had once been hired to another person, as cook, on board a vessel employed in the Mobile and Pensacola trade, and this person deposed that there was then no agreement that his vessel should confine itself to that particular trade, but that he hired him simply as a cook for the vessel. The plaintiff's son was a part

owner of the Lehman ; her husband was the vessel's agent, and had its funds in <span class="margin">HUNTINGTON<br>*v.*<br>RICARD.</span> his hands. The vessel's previous voyage was to the Brazos, and the slave went in her. Her last voyage to the Brazos, on the return from which place she was lost, was not only known to the husband, but the agreement for the charter party was made in his office. Here was full knowledge on the part of the hus-band, whom the wife permitted to administer her property, of the mode in which the slave was employed, and an implied assent from the absence of any objections. We may add, with the district judge, that it is scarcely probable that the wife knew nothing of the two voyages to the Brazos.

There is the testimony of a witness, that he had applied to *Mrs. Huntington* to hire the slave, at higher wages, for sea voyages, and that she refused, declar-ing her unwillingness to let him go to sea, because the slave disliked it, and that *Ricard* told the witness, he could not get the slave, because *Mrs. Huntington* had that objection. This seems to have been in 1846, when *Ricard* comman-ded another vessel. Her views may have changed afterwards, particularly when *Ricard* got another vessel, and her son became interested in it.

We readily concur with the district judge in the opinion, that the plaintiff is not entitled to judgment, but we think the court below should have gone further than a non-suit, and rendered final judgment in favor of the defendant. The defendant has asked that relief in his answer to the appeal. C. P. 890.

It is therefore decreed, that the judgment of the district court be reversed, and that there be final judgment in favor of the defendant; the plaintiff to pay costs in both courts.